Filed 4/25/25  Hernandez v. Rafie & Khoshbin Dental Corp. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| JOANNA HERNANDEZ,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>RAFIE & KHOSHBIN DENTAL CORP., et al.,<br><br>　　　　Defendants and Respondents. | B333067<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV31222) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Reversed.

Law Offices of Sandra C. Muñoz and Sandra C. Muñoz for Plaintiff and Appellant.

BDG Law Group, Michele M. Goldsmith and Renee B. Brown for Defendants and Respondents.

_____

Plaintiff Joanna Hernandez appeals from a grant of summary judgment in favor of defendant Rafie & Khoshbin Dental Corporation, which does business as Torrance Dental Center.[1]  Plaintiff brought claims for discrimination and retaliation, alleging defendant terminated her because of her pregnancy.  The trial court granted summary judgment upon concluding defendant had met its burden to demonstrate it terminated plaintiff for legitimate, nondiscriminatory reasons, and plaintiff had failed to raise a triable issue that those reasons were pretextual.

We disagree with the trial court.  Plaintiff presented evidence of discriminatory statements by defendant's office manager, thus raising a triable issue as to discriminatory animus.  Defendant's representatives gave inconsistent testimony as to the reasons for plaintiff's termination, which raises a triable issue as to whether those reasons were pretextual.

Accordingly, we reverse.

---

[1] Rafie & Khoshbin Dental Corporation and Torrance Dental Center were identified as separate defendants in plaintiff's complaint and in other filings throughout the underlying litigation, although the answer to the complaint identified only a single defendant, "Rafie & Khoshbin Dental Corp. doing business as Torrance Dental Center."  (Some capitalization omitted.)  Consistent with the answer, we will refer in this opinion to that single defendant.

## FACTUAL BACKGROUND

### 1. *The dental practice*

Defendant is a small dental practice with two dentists, Kamran Rafie and Sherie Khoshbin. Defendant's office manager is Glenda Ong.[2]

Ong testified she and Rafie mutually made hiring decisions for the practice. Ong did not personally make termination decisions, but would make termination recommendations to Rafie and issue warnings to employees. According to Ong, Khoshbin was not involved in termination decisions.

Rafie first testified Ong had firing authority, but then stated she did not have that authority and had to obtain his or Khoshbin's authority before terminating an employee.

### 2. *Plaintiff's work performance in 2019 and 2020*

Plaintiff began working for defendant on or about January 2, 2019 as a front office receptionist. Ong testified she liked plaintiff for the first few months, but plaintiff then became too chatty and personal with patients. Ong verbally instructed plaintiff to change how she conversed with patients. Plaintiff

---

[2] Plaintiff objected to declarations submitted by Khoshbin and Ong for lack of proper signatures. The day before the summary judgment hearing, the trial court issued a tentative ruling sustaining plaintiff's objections. That night, defendant's counsel filed amended declarations with corrected signatures, to which plaintiff objected as untimely. The trial court stood by its ruling and declined to consider the declarations. Defendant has not challenged that ruling, and we do not consider the excluded declarations in resolving this appeal, although we do consider Khoshbin's and Ong's deposition testimony.

did not change her behavior, and Ong had to speak to her about it on multiple occasions.

Around the end of 2019, plaintiff informed Rafie and Ong she was getting divorced. According to Rafie, this impacted plaintiff's work. Plaintiff was less focused on her job and needed time off to see her lawyer. Rafie was concerned because plaintiff was not consistently updating patient medical histories or calling patients to confirm appointments, and was spending time on her cell phone during work hours.

Ong similarly testified plaintiff made mistakes when updating medical information on patient charts. On one occasion plaintiff put a patient's medical information on another patient's chart, and on another occasion made a similar mistake with a patient's insurance information. Ong also had concerns about plaintiff's honesty. At one point Ong discovered a letter from a specialist to Rafie had been opened. Plaintiff denied opening the letter, but later admitted it.

Khoshbin testified plaintiff was friendly with patients, and when she focused on her job she did it well, but she often lacked focus. According to Khoshbin, plaintiff at times failed to obtain necessary signatures for documents, did not update medical histories, misplaced charts, and failed to schedule follow-up appointments for patients. Khoshbin stated these problems happened often, beginning in mid-2019. Rafie would give plaintiff warnings about her performance, and would ask Khoshbin beforehand if Khoshbin had anything to add.

Ong signed a written warning, dated February 5, 2020, that concerned plaintiff's opening the letter to Rafie and lying about it. Plaintiff's signature is not on the warning, and plaintiff avers she never received the document. However, in responding

4

to defendant's separate statement of undisputed facts, plaintiff did not dispute Ong admonished her about opening the letter.

Ong issued another written warning on September 21, 2020 after a patient complained that plaintiff had left him waiting too long and had checked in another patient before him although his appointment was earlier. The written warning additionally noted plaintiff had failed to ask another patient health questions pursuant to COVID-19 protocols. The warning stated plaintiff would be subject to termination if she received a third written warning. On a line for "Anticipated employee performance or conduct (include follow up date and possible further discipline)," the warning stated, "monthly evaluation."

Plaintiff signed the written warning and provided a response, stating she asked the necessary COVID-19 questions, and to the extent she checked the wrong patient in first, it was because both patients were in the waiting room already when plaintiff arrived for work so she was not sure who had arrived first.

Ong issued another written warning on November 20, 2020, stating plaintiff had acted unprofessionally toward Ong when Ong asked her to do a task. The warning further stated plaintiff had not properly verified a patient's insurance information and "did not collect copay as per [Ong's] instruction." Ong wrote that when she asked plaintiff to improve, plaintiff told her to fire plaintiff because there was nothing more plaintiff could do. The warning stated plaintiff would be terminated if she did not improve, and "evaluation in a month" was indicated on the line for future actions.

Plaintiff wrote a response to the warning on the warning itself. The handwritten response is difficult to read, but it

appears plaintiff objected that the warning was unreasonable, and the reason she made the comment inviting Ong to fire her was because of the way Ong had spoken to her. At the bottom of the warning, plaintiff wrote "Agreed," but it is unclear to what she was agreeing. At deposition, plaintiff explained she told Ong to fire her because Ong was screaming at her and plaintiff was upset.

Ong testified she first talked to Rafie about firing plaintiff around the time of the November 20, 2020 written warning. According to Ong, they did not fire her because they needed someone in the front office, and they did not often fire people. Ong said Rafie's view was they should just let plaintiff keep working until she resigned.

Rafie averred in a declaration that "[b]y early January 2021, the consensus among myself, Ms. Ong and Dr. Khoshbin was that [plaintiff] was not well suited for the office receptionist position and should be replaced."

Ong similarly testified that by January 2021, the practice was seeking a replacement for plaintiff, and Ong placed an ad for a receptionist on Craigslist. She said she did so because it was a new year and she wanted to start afresh. Also, she thought after the holidays more people might be looking for work and would respond to the ad. Ong did not receive any responses.

Khoshbin testified she and Rafie agreed plaintiff should be fired. Khoshbin did not specify a time this decision was made, but stated it occurred before plaintiff announced her pregnancy.

3.    *Plaintiff announces pregnancy*

In February 2021, plaintiff informed the practice she was pregnant. Ong testified plaintiff told Ong her due date was roughly in August, and plaintiff wanted to keep working as long

6

as possible during the pregnancy so she could have more maternity leave after the birth.

According to plaintiff, Ong had made comments to her about pregnancy, before Ong knew plaintiff was pregnant. Specifically, plaintiff averred in a declaration that Ong "had warned me not to get pregnant because of my work schedule." In deposition, plaintiff testified Ong also told her that she "better be on birth control pills" because plaintiff had a boyfriend. Ong in deposition denied or did not recall making these statements.

Plaintiff further testified that when she told Ong of her pregnancy, Ong commented that plaintiff had just gotten out of one hole, referring to her divorce, only to get into another one. Plaintiff said she informed Rafie of this comment, and Rafie stated if that was the way Ong felt, then that was the way she felt. In deposition, Ong denied making this comment.

Plaintiff testified that after she announced her pregnancy, Ong was ruder to her and would scold her for no reason. Ong also would slam charts on plaintiff's desk. Plaintiff said if plaintiff asked to come in late because of an appointment with her obstetrician, Ong would text plaintiff not to come in that day.

## 4. *Reduction in plaintiff's hours*

Ong issued another written warning to plaintiff on March 22, 2021. The warning contained a list of criticisms: "charts are not update[d] with medical history"; "charts are not prepared ahead of time"; "inaccurate dental ins[urance] eligibility"; "using office phone for personal use"; "too loud in the front [and] chatting too much"; and "always looking on her cellphone during office hours."

Plaintiff wrote a response on the warning, apparently contesting the fairness of the criticism of her personal phone

use,[3] and explaining the charts were not prepared ahead of time because she had taken the day off with permission.

The next day, March 23, 2021, Ong provided plaintiff with an employee review form identifying many areas that needed improvement, and one area, "Volume speed of output," marked as "unacceptable." Her appearance (i.e., grooming and clothing) and adherence to start and end times of the workday were marked "good." The "[w]eak points (to be improved)" were "same issues as the last warning."

Ong testified that by the time she provided this warning and review form to plaintiff, the practice was affirmatively looking to replace plaintiff. According to Ong, the practice did not fire her immediately because the practice still needed a receptionist, and plaintiff was doing her job well enough that the practice could wait until a replacement was found.

Also in March 2021, the practice hired a new dental assistant, referred to in the record as Jocelyn, to assist Rafie and Khoshbin. After a short period, Rafie decided Jocelyn was not efficient in that role. He decided to move Jocelyn into a receptionist position because, as Rafie averred in his declaration, "it was unclear when [plaintiff] would be going out on maternity leave." Ong testified they decided to train Jocelyn for the receptionist position while plaintiff was still there for purposes of a "good transition." Plaintiff was involved in training Jocelyn.

---

[3] The parties dispute whether defendant uniformly applied its prohibition on personal phone use, or applied it selectively just as to plaintiff. We decline to reach this dispute, which is not essential to our resolution of the appeal, and therefore do not summarize the parties' evidence relevant to the issue of personal phone use.

Around April 2021, Rafie reduced plaintiff's working hours. Rafie testified he did so because the office was not as busy. He further testified Jocelyn worked the hours plaintiff was not working. He stated his intention was for both plaintiff and Jocelyn to serve as receptionists until plaintiff left on maternity leave. Asked why he reduced plaintiff's hours rather than allowing her to work full-time until she left on leave, Rafie stated plaintiff was not being as productive, "[a]nd it didn't seem like she cared that her hours [were] cut." He stated plaintiff never asked for more hours or otherwise commented on the reduction of hours, and seemed happy to work only two days a week.

Plaintiff in deposition stated she did not notice a slowdown in office activity that justified cutting her hours, and noted the hours cut from her schedule went to Jocelyn.

Khoshbin testified plaintiff's hours were cut because Jocelyn was moved into the receptionist position, although she did not remember why that decision was made. Khoshbin further testified plaintiff was upset about her hours being cut, and plaintiff asked Khoshbin why Jocelyn had been placed in the receptionist position when plaintiff was several months away from taking maternity leave. Khoshbin believed she told Rafie that plaintiff was upset about the reduction in hours, although Khoshbin could not recall the conversation.

According to Khoshbin, plaintiff told Khoshbin she believed Jocelyn had been placed in the receptionist position because the practice was trying to get rid of plaintiff, but now that she was pregnant, she would sue if the practice fired her. Khoshbin testified plaintiff told her this on more than one occasion.

Ong similarly testified that after she issued the March 2021 warning to plaintiff, plaintiff declared she could not

be fired now that she was pregnant, and would sue if the practice fired her.

Plaintiff testified she told Khoshbin she believed the reduction in hours was retaliation for her pregnancy, but never filed any sort of protest. Plaintiff denied telling anyone she could not get fired because of her pregnancy.

**5.    *Termination***

Plaintiff was terminated in May 2021. Ong testified she and Rafie made this decision on Ong's recommendation. Ong testified plaintiff's performance did not improve after the March 2021 warning, although there were no more incidents or problems caused by plaintiff's bad performance because "Jocelyn [was] taking care of [the] crucial things." Ong felt plaintiff's stating on multiple occasions that she could not be fired because of her pregnancy was "not healthy anymore, because there are other people in the office, you know, who [are] getting affected by these kind[s] of statement[s]." Ong testified plaintiff's statements "really triggered me, like, we need to be serious on this one." Ong was concerned plaintiff was no longer focusing on her work and believed it was better to get rid of her.

According to Ong, she and Rafie discussed terminating plaintiff in April 2021, but did not fire her until May because they still needed plaintiff to help Jocelyn with the transition.

Rafie testified he decided in May 2021 to fire plaintiff on Ong's recommendation after Ong informed him plaintiff was putting patient information in the wrong charts. Asked if Ong gave any other reason to fire plaintiff apart from the charts, Rafie testified no. Asked if Ong, in discussing termination, said anything about plaintiff making comments about suing the company if she were fired, Rafie testified no.

10

In Rafie's declaration in support of the motion for summary judgment, he averred he learned in May 2021 that plaintiff had placed one patient's insurance information in another patient's chart, and decided with Khoshbin's consent to fire plaintiff.

## PROCEDURAL BACKGROUND

On August 24, 2021, plaintiff filed a complaint against defendant asserting causes of action under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) for discrimination based on sex and pregnancy, retaliation, failure to prevent discrimination, and wrongful termination in violation of public policy. Defendant moved for summary judgment or, alternatively, summary adjudication.

The trial court granted defendant's motion. The court found defendant had met its burden to show a legitimate, nondiscriminatory reason for plaintiff's termination by providing evidence of her poor job performance. The court further found plaintiff had not met her burden to demonstrate defendant's legitimate, nondiscriminatory reason was pretextual.

The court noted plaintiff's evidence that Ong "made a number of negative comments to the Plaintiff indicating a bias against pregnancy. [Citation.] However, the Plaintiff acknowledges that Ong made these comments before she ever told Ong that she was pregnant. [Citation.] The Plaintiff informed Ong of her pregnancy on February 24, 2021. [Citation.] But by early January 2021, 'the consensus among [Rafie], Ms. Ong and Dr. Khoshbin was that [Plaintiff] was not well suited for the office receptionist position and should be replaced.' [Citing Rafie's declaration.] Thus, the Plaintiff's evidence of Ong's bias against pregnancy cannot show causation for her

11

termination when that decision was made before the Plaintiff informed [defendant] of her pregnancy."

The court also noted plaintiff had argued Ong recommended her termination "after the Plaintiff 'went around the office proclaiming she could not be fired because she was pregnant and she would sue them if they did fire her.' [Citations.]" The court pointed out that plaintiff at deposition denied making these statements, in which case the statements could not have been the basis for her termination. Even if plaintiff did make the statements, the court found this did not demonstrate plaintiff was fired because of her pregnancy, but because, as Ong testified, " '[I]nstead of getting an improvement from [Plaintiff], she's getting worse,' [and] the Plaintiff's proclamations were 'not healthy anymore, because there are other people in the office, you know, who is getting affected by these kind[s] of statement[s].' [Citation.]"

Based on the above analysis, the court granted summary adjudication on the discrimination and retaliation causes of action. Having concluded there was no discrimination or retaliation, the court also granted summary adjudication on the causes of action for failure to prevent discrimination and for wrongful termination in violation of public policy.

The court entered judgment in defendant's favor. Plaintiff timely appealed.

## DISCUSSION

A trial court shall grant a motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

12

We "view the evidence in the light most favorable to [the nonmovant] and draw all reasonable inferences in [the nonmovant's] favor." (*California Medical Assn. v. Aetna Health of California Inc.* (2023) 14 Cal.5th 1075, 1087.) Our review is de novo. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

Plaintiff's complaint arises under FEHA, which " 'prohibits an employer from subjecting an employee to an adverse employment action based on the employee's protected status. [Citation.] . . . .' [Citations.]" (*Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 684 (*Wawrzenski*).) Sex, including pregnancy, is a protected status under FEHA. (Gov. Code, §§ 12926, subd. (r)(1)(A), 12940, subd. (a).)

In assessing FEHA discrimination and retaliation claims on summary judgment, " 'California courts apply the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.' [Citations.]" (*Wawrzenski*, *supra*, 106 Cal.App.5th at p. 684; see *id.* at p. 699 [FEHA retaliation claim also subject to *McDonnell-Douglas* framework].) Under this framework, "the employee must first establish a prima facie case of unlawful discrimination or retaliation [citation]; next, the employer bears the burden of articulating a legitimate reason for taking the challenged adverse employment action [citation]; and finally, the burden shifts back to the employee to demonstrate that the employer's proffered legitimate reason is a pretext for discrimination or retaliation [citation]." (*Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 910.)

The trial court appears to implicitly have found plaintiff met her prima facie burden at the first step of the *McDonnell-Douglas* framework, because the court in its analysis skipped to

13

the second step.  On appeal, defendant does not argue the trial court erred in doing so.  We therefore also will skip to the second step.

We agree with the trial court that defendant met its second-step burden of producing evidence of legitimate, nondiscriminatory reasons for firing plaintiff.  Defendant submitted evidence the practice had concerns about plaintiff's work performance well before she announced her pregnancy, as testified to by Rafie, Khoshbin, and Ong, and documented in written warnings.  Rafie and Ong also testified they had decided to replace plaintiff by January 2021, again before she announced her pregnancy.  The precipitating event for her termination in May 2021, according to Rafie, was plaintiff's error in mixing up patient insurance information.

The burden thus shifts to plaintiff to show defendant's proffered legitimate reasons for her termination were pretextual.  Pretext may be demonstrated in a number of ways, including if there are " ' "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons[.]' " ' " (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 594, italics omitted.) " ' "Pretext may also be inferred from the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before [the] termination." ' [Citation.]" (*Ibid.*)  "However, simply showing the employer was lying, without some evidence of

14

discriminatory motive, is not enough to infer discriminatory animus." (*Ibid.*)

We disagree with the trial court that plaintiff did not meet her burden of raising triable issues as to pretext. First, she presented evidence of discriminatory animus. She averred in her declaration that Ong, prior to learning plaintiff was pregnant, "had warned me not to get pregnant because of my work schedule." According to plaintiff, Ong also had told her to get on birth control, and, after learning of the pregnancy, told plaintiff she had gotten out of one hole (her divorce) only to get into another. If indeed Ong made these statements, they support an inference of animus against pregnancy. Although Ong denied making these statements, her denial only creates a triable issue of fact as to whose version of events is correct.

Defendant argues Ong's feelings regarding pregnancy are irrelevant because Rafie, not Ong, made the decision to fire plaintiff, and Ong did not have authority to fire employees. By Ong's own admission, however, she was responsible for issuing warnings to employees and making termination recommendations to Rafie, and Rafie fired plaintiff on Ong's recommendation. This creates a triable issue whether Ong's purported discriminatory animus motivated her recommendation to Rafie. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 542 (*Reid*) [" 'If [the formal decision maker] acted as the conduit of [an employee's] prejudice—his cat's paw—the innocence of [the decision maker] would not spare the company from liability' "]; *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 551 ["showing that a significant participant in an employment decision exhibited discriminatory animus is enough to raise an inference that the employment decision itself was discriminatory,

15

even absent evidence that others in the process harbored such animus"].)

Defendant further argues Ong's purported comments "were not indicative of discriminatory intent but rather reflect workplace dynamics." In so arguing, defendant asks us to draw inferences in defendant's favor, which is not the standard on summary judgment.

Defendant contends, "Isolated statements and/or quip remarks made in a workplace context do not suffice to prove a pervasive culture of discrimination or bias." Defendant cites no authority for this proposition, and case law appears to be to the contrary. (See *Reid, supra*, 50 Cal.4th at p. 538 [rejecting "stray remarks" doctrine's categorical exclusion of evidence].) Regardless, plaintiff has identified at least three discriminatory statements by Ong, so we reject the characterization of the comments as "[i]solated statements and/or quip remarks," particularly when paired with the additional evidence of pretext we discuss *post*. (See *id.* at p. 545 ["in reviewing the trial court's grant of Google's summary judgment motion, the Court of Appeal properly considered evidence of alleged discriminatory comments made by decision makers and coworkers along with all other evidence in the record"].)

Defendant emphasizes, as the trial court noted, that Ong's alleged remarks predated plaintiff's pregnancy announcement. This is true as to some of Ong's remarks, but not all—plaintiff testified Ong made the comment about plaintiff coming out of one hole only to fall in another in response to the pregnancy announcement. In any event, we fail to see the relevance of the timing of Ong's statements insofar as the pregnancy announcement. If Ong demonstrated a bias against pregnancy

16

before she knew plaintiff was pregnant, that supports the inference that she would direct that bias against plaintiff when plaintiff announced her pregnancy.

To the extent the evidence of discriminatory animus is insufficient in itself to defeat summary judgment, there are also numerous inconsistencies in defendants' witnesses' testimony that create a triable issue of fact as to the reasons for plaintiff's termination.

Rafie and Ong testified they decided by January 2021 to replace plaintiff. The trial court appears to have found this evidence dispositive in concluding plaintiff's February 2021 announcement of her pregnancy was not a causal factor in her termination. Based on other evidence, a finder of fact reasonably could doubt Rafie's and Ong's testimony.

As plaintiff notes, defendant did *not* fire plaintiff in January 2021, but instead in May 2021. When Rafie and Ong in deposition were asked about the termination, they did not attribute it to the purported January 2021 decision. Rather, they each attributed the termination to events occurring *after* plaintiff announced her pregnancy. Their explanations, moreover, were inconsistent. Ong testified she recommended termination because plaintiff was not improving in her performance and was repeatedly telling her employers she could not be fired because she was pregnant and would sue if they tried. Rafie, in contrast, testified and averred he fired plaintiff on Ong's recommendation after Ong informed him in May 2021 that plaintiff had put a patient's insurance information in another chart. Rafie denied that Ong gave any other reasons for termination, or said anything about plaintiff threatening to sue the company. The differing accounts of why plaintiff was fired calls into question

17

the legitimacy of defendant's purported reasons for termination, and also raises a triable issue as to whether they decided to fire plaintiff before or after she announced her pregnancy.

Also inconsistent with a January 2021 decision to fire plaintiff were Rafie's statements concerning Jocelyn, the other receptionist. If, indeed, the practice had decided in January 2021 to replace plaintiff, one would expect Rafie to testify he moved Jocelyn into the receptionist position as part of that January 2021 plan. He did not so testify. Rather, he averred in his declaration that he moved Jocelyn into the receptionist position because of plaintiff's upcoming maternity leave. He also testified his plan was for plaintiff and Jocelyn to work together until plaintiff went on maternity leave, which is not consistent with a purported plan to permanently replace plaintiff once Jocelyn was fully trained.

Additionally, there was inconsistent testimony concerning the reduction of plaintiff's hours shortly before her termination. Rafie testified he reduced plaintiff's hours in April 2021 because the office was not as busy, that is, there was not enough work available to fill plaintiff's previous work schedule. He acknowledged, however, that Jocelyn worked the hours plaintiff was not working, which means he took hours from plaintiff that plaintiff could have been working. He then explained his decision to reduce plaintiff's hours was because she was not being productive and appeared not to care her hours were cut. This statement, in addition to contradicting Rafie's own testimony that he cut plaintiff's hours because the office was less busy, was in tension with Khoshbin's testimony that plaintiff complained to her about the reduction in hours and Khoshbin told Rafie about it.

18

Although plaintiff raised these inconsistencies in her opening brief, defendant largely does not address them in its own brief, instead stating, without elaboration, "[Defendants'] explanations have been consistent and rooted in factual and admissible evidence." Based on our analysis above, we disagree.

Instead, defendant challenges arguments purportedly raised by plaintiff that are not dispositive to our conclusion here. Defendant argues plaintiff's testimony that Ong treated her differently after she announced her pregnancy cannot raise a triable issue because the testimony is subjective and uncorroborated. Our conclusion is based not on plaintiff's subjective perceptions, but on her testimony as to what Ong actually said to her, as well as Ong's, Rafie's, and Khoshbin's own testimony.

Defendant argues timing alone cannot establish pretext, and therefore plaintiff's termination after she announced her pregnancy does not, by itself, establish she was terminated because of the pregnancy. Our holding does not solely or even primarily rely on timing. Rather, we rely on evidence of discriminatory animus and conflicting explanations from defendant's representatives as to the reasons for plaintiff's termination.

Defendant argues placement of Jocelyn in the receptionist position, despite her poor performance as a dental assistant, does not suggest pretext, nor does the fact that Ong gave plaintiff her written employee review shortly after plaintiff announced her pregnancy. Again, our analysis does not rely on these arguments or evidence.

In sum, the record contains sufficient evidence to raise triable issues as to whether defendant fired plaintiff because of her pregnancy.

As to plaintiff's second cause of action for retaliation, the trial court conducted no analysis separate from its discrimination analysis. The only argument defendant raises unique to the retaliation claim is that plaintiff "admitted at her deposition that she did not file anything that would be regarded as a protest with [defendant] or any complaint claiming retaliation based on her pregnancy." (See Gov. Code, § 12940, subd. (h) [under FEHA, employer may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part"]; *Wawrzenski, supra*, 106 Cal.App.5th at p. 700 [activity protected under FEHA includes " 'oppos[ing] conduct that the employee reasonably and in good faith believes to be discriminatory' "].)

It is true plaintiff did not file any written protest, but she testified she complained to Khoshbin that her hours had been cut because of her pregnancy. Khoshbin corroborated this testimony. "Informal complaints to management about discriminatory employment practices are considered sufficient opposition to trigger the prohibition against retaliation." (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1018.) Plaintiff therefore has raised a triable issue as to whether she was fired not only for being pregnant, but also for objecting to the reduction in hours because of the pregnancy. Although defendant has provided evidence of legitimate, nonretaliatory reasons for the termination, our

20

pretext analysis, *ante*, applies equally to plaintiff's retaliation claim.

The trial court granted summary judgment as to the third cause of action for failure to prevent discrimination based on its conclusion that plaintiff had not met her burden to show discrimination, a conclusion we have rejected. On appeal, defendant's only unique argument as to this cause of action is that plaintiff "has not provided sufficient independent evidence that [defendant] failed to take reasonable steps to prevent discrimination. Even if the underlying discrimination claim were valid, [plaintiff] must demonstrate that [defendant was] aware of the discriminatory behavior and failed to take appropriate action. The evidence presented does not support the assertion that [defendant] ignored complaints or failed to implement anti-discrimination measures."

Plaintiff did present evidence, corroborated by Khoshbin, that she complained to Khoshbin that her hours had been cut because of her pregnancy. Khoshbin testified she informed Rafie plaintiff was upset about her reduction in hours. There is no evidence Rafie, Khoshbin, or Ong took any ameliorative steps in response to this complaint—rather, plaintiff's hours remained reduced and she was fired shortly thereafter. Plaintiff also testified she informed Rafie when Ong, in response to the pregnancy announcement, said plaintiff had come out of one hole and now was in another, and Rafie took no action. Plaintiff thus has raised a triable issue as to whether defendant failed to prevent discrimination.

As to the fourth cause of action for wrongful termination in violation of public policy, defendant's sole argument below, which it repeats on appeal, is that plaintiff's failure to establish

21

discrimination or retaliation under her first two causes of action necessarily defeats the fourth cause of action as well. (See *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229 ["because [the plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails"].) The trial court agreed with this argument. Because, as we have concluded, plaintiff did in fact raise triable issues as to discrimination and retaliation, we reject defendant's argument.

## DISPOSITION

The judgment is reversed. Plaintiff is awarded her costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, Acting P. J.


We concur:



WEINGART, J.



M. KIM, J.